### S. H. LUMPKIN V. S. R. MUNCEY.

(Case No. 5875.)

1. REVISED STATUTES, ARTICLE 670, CONSTRUED—Art. 670, R. S., was intended as declaratory of what the law was previous to the passage of the Revised Statutes.
2. SAME—NEW COUNTIES—The acts of the legislature, which create new counties, do no more than provide for their organization; and until a new county is actually organized or attached to some other county or district, its territory remains subject to the jurisdiction of the old county. (O'Shea v. Twohig, 9 Tex., 336, and Clark v. Goss, 12 Tex., 396, reviewed and followed.)
3. SAME—REGISTRATION—Until the new county is so organized or attached, transfers of lands located in it should be registered in the old county.
4. SAME—Being so registered, it is not necessary to register them again in the new county when organized, nor in any county to which it may be thereafter attached for judicial purposes. (Following McKissock v. Colquhoun, 18 Tex., 148, and other cases.)
5. SAME—The act of March 30, 1881, expressly declared that the registration of conveyances of land lying in unorganized counties, made previous to its passage in the land district to which such county was attached, shall not be affected by that act.

APPEAL from Runnels. Tried below before the Hon. Wm. Kennedy. The opinion states the case.

*Chas. I. Evans*, for appellant, cited: Adams v. Hayden, 60 Tex., 225; Sullivan v. Dimmitt, 34 Tex., 114; Astor v. Wells, 4 Wheat., 466; R. S., art. 4358; Rucker et al. v. Spofford, Tex. Law Rev., vol. 4, p. 114.

*Willingham & Harris*, for appellee, cited: Runge & Co. v. Wyatt, 25 Tex. Sup., 292; R. S., art. 670; O'Shea v. Twohig, 9 Tex., 336; Clark v. Goss, 12 Tex., 396; McKissock v. Colquhoun. 18 Tex., 148; Herrington v. Williams, 31 Tex., 448; Melton v. Turner, 38 Tex., 81.

WILLIE, CHIEF JUSTICE.—The question for decision in this case is: Was the registration in Bexar county, February 17, 1858, of the deed from de Cordova to Santees for the land in controversy, notice to the subsequent purchasers of the land under the sale made by DeCordova's administrator? The boundaries of Runnels county were defined by an act of our legislature of February 1, 1858, and provision was made for its organization, but the organization did not actually take place till February 12, 1880.

It was attached for judicial purposes to Brown county by act of February 14, 1860. The land in controversy lies in that part of Runnels county which, at the date of the passage of the act of February 1, 1858, constituted a portion of the county of Bexar. It is not disputed but that a record of DeCordova's deed to Santees, in Bexar county,

prior to the last mentioned date, would have fulfilled all the requirements of our registration laws. This was settled by several decisions of this court, made before the adoption our Revised Statutes, and by these statutes the law is declared to be in accordance with those decisions by express enactment. Art. 4358; McKissock v. Colquhoun, 18 Tex., 148; Frizzell v. Johnson, 30 Tex., 31; Melton v. Turner, 38 Tex., 81; Howard v. Colquhoun, 28 Tex., 134. But it is said that Runnels county having been created by the act of February 1, 1858, a record of the deed thereafter in Bexar county was not sufficient as notice to subsequent purchasers. If this be so, the mere creation of a new county by the legislature severs its connection from the county from which it is taken, so as to immediately deprive the latter of all control and jurisdiction over the territory of which the new county is formed. Our Revised Statutes, passed whilst the deed in question was upon record in Bexar county, and before the organization of Runnels county, and before the sale of the land in controversy by DeCordova's administrator, provide that, until a new county is organized, in accordance with law, the territory thereof shall remain in all respects subject to the county from which the same has been taken. Art. 670.

This was intended as declaratory of what the law was previous to the passage of the Revised Statutes, as is apparent from the decisions referred to in the margin by the commissioners who reported these statutes to the legislature, and from the report itself.

This court had in effect held in Oshea v. Twohig, 9 Tex., 336, and Clark v. Goss, 12 Tex., 396, that acts of the legislature which create new counties do no more than provide for their organization, and, until the new county is actually organized, the territory remains subject to the jurisdiction of the old county. In the first of these cases it was held that suit against parties residing in Kinney county, where the cause of action arose, could be brought in Bexar county, the former not having been organized at the time, though previously created out of the territory of Bexar. In the second, that when the organization of a new county is provided for by law, the acts of the officers of the old county throughout the territory designated for the new county, done after the passage of the law, and before the actual organization of the new county, are valid. The case to which the principle was applied was that of a location and survey of land lying in the new county by officers of the old county. A similar ruling occurred in Runge & Co. v. Wyatt, 25 Tex. Sup., 272.

The principle upon which these decisions rest is that any citizen of our state is entitled to all the benefits of civil government, and the rights and privileges of the constitution and laws.

But, if persons are to seek their rights and protect their property through the courts and officers of a newly created county, they will be deprived of these benefits during the period intervening between the creation of the new county and its organization. This principle must govern the present case, no express laws inconsistent with it being found upon our statute books. Otherwise, persons holding land in Runnels county, at the time its boundaries were defined by the legislature, and whose deeds had not been previously recorded, were deprived for a long period of time of all the benefits of the registration laws. Their titles were at the mercy of their vendors, and could be defeated by subsequent purchasers who had no actual notice of the deeds by which they were held.

The effect of the decisions alluded to is to protect parties having interest in the new county against any species of injustice and injury that might result from holding that the act of its creation *ipso facto* severed its territory from the parent county. They clearly hold that, notwithstanding the passage of such an act, this territory remains, to all intents and purposes, part and parcel of the old county, until the new one is organized ; or, it may be added, till the legislature attaches it to some other county or district. Being still a part of Bexar county, notwithstanding the act of February 1, 1858, transfers of land lying where the land in controversy is situated, were properly recorded in that county.

If recorded in the proper county, there was no necessity to register again in Runnels county, or in any county to which it may have been thereafter attached for judicial purposes. McKissock *v.* Colquhoun and other authorities already cited.

Bexar county formed a land district at the time the record was made, (P. D., 4492) and it was expressly declared by the act of March 30, 1881, that the registration of conveyances of land lying in unorganized counties, made, previous to its passage, in the land district to which such county may have been attached, should not be affected by that act, which required that such registration should be made in the county to which such unorganized county was attached for judicial purposes.

Our conclusion, therefore, is that the record of the deed to Santees in Bexar county, at the time it occurred, was notice to those claiming under the purchase from DeCordova's administrator, and that no title passed by that sale. The judgment of the court below is therefore correct, and it is affirmed.

AFFIRMED.

[Opinion delivered May 25, 1886.]