# NOVEMBER 1919

R. L. LEONARD V. BENFFORD LUMBER COMPANY ET AL.

No. 2908.    Decided November 12, 1919.

(216 S. W., 382.)

**1.—Land Certificate—Conveyance—Record of Title—Innocent Purchaser.**

A conveyance of a land certificate by one of the heirs of the original grantee recited a partition of his estate in the District Court between his heirs by which the certificate was allotted to the one so conveying, and this, after the location of the certificate, was recorded in the county where the land lay. *Held,* that the conveyance was such an instrument as the statute authorized to be recorded. The land having been patented subsequently to the heirs of the original grantee, a later purchaser from such heirs was charged by record with notice of the conveyance of the certificate and of the partition therein recited, and could not be protected as an innocent purchaser against those having title thereby.    (Pp. 86-90.)

**2.—Same—Instruments Entitled to Record.**

Though the transfer of an unlocated certificate was one of personal property, it became, after the location of the certificate, a conveyance of and an instrument concerning that land, its legal effect being then to invest the purchaser with title to the land, and it was then entitled to record as such in the proper county under our registration statute; and when so recorded constituted constructive notice of its contents to subsequent purchasers from the heirs after patent to them.    (P. 87.)

**3.—Record of Title—Notice.**

A purchaser of land from the heirs of the original grantee, it being patented to the heirs, is not entitled to look solely to the patent as the origin of his title. He is taxed with constructive notice of the rights acquired by transfer of the certificate by one of the heirs, as sole owner by decree of partition of the estate of the original grantee, where such transfer was duly recorded in the proper county after location of the certificate.    (Pp. 87, 88.)

**4.—Same—Conveyance in Chain of Title.**

A purchaser from the patentees, heirs of the original grantee of a land certificate, was bound to take notice of a previous recorded conveyance of the certificate from one of such patentees as being a vendor under whom he claims title and for record of whose deeds he is bound to search.    (Pp. 89, 90.)

**5.—Same—Recitals in Conveyance.**

Where a conveyance recited a decree of partition between heirs of an estate awarding grantor as one of them sole title to the land certificate conveyed, a subsequent purchaser from the heirs to whom the land had been afterward patented, being taxed with constructive notice of the recorded conveyance of the certificate, had thereby notice also of the partition decree

therein recited, and could claim title as an innocent purchaser neither to the interest of the grantor as heir, nor to that as sole owner by virtue of the recited decree. (Pp. 89, 90.)

#### 6.—Cases Distinguished.

Breen v. Morehead, 104 Texas, 254, and Wimberly v. Pabst,, 55 Texas, 587, distinguished from the present case. (P. 88.)

Error to the Court of Civil Appeals for the Ninth District, in an appeal from Polk County.

Leonard brought trespass to try title against the Benford Lumb. Co. and others. Judgment was for defendants and plaintiff appealed. The judgment of the trial court was affirmed, 181 S. W., 797. Appellant thereupon procured writ of error. The case was referred to the Commission of Appeals, Section B, where it was recommended that the judgment be reversed in part and rendered in favor of plaintiff in error for one-eighth only of the land in controversy; but a dissenting opinion recommended that it be rendered for appellant for the entire land. The opinion of the Commission was subsequently withdrawn and the case set for hearing in the Supreme Court, by whom it was decided.

*S. H. German* and *R. E. Minturn*, for plaintiff in error.—The due registration of appellant's title to the certificate in Trinity County, after the location of such certificate on land then situated in said County. and before that portion of Trinity County was detached and made a part of Polk County, charged appellees with *actual* notice of appellant's title. Rev. Stats., art. 6857; Lewis v. Johnston, 68 Texas, 448.

The due registration of appellant's title to the certificate in Trinity County after the location of such certificate on land then situated in said County, and before that portion of Trinity County was detached and made a part of Polk County, charges appellees with *constructive* notice of appellant's title. Williamson v. Work, 77 S. W., 267; Sickles v. White, 17 S. W., 543; Herrington v. Williams, 31 Texas, 448; Gist v. East, 41 S. W., 396; Melton v. Turner, 38 Texas, 84.

Appellees were put upon inquiry by reason of the record of appellant's title in Trinity County, which inquiry, if pursued, would have led them to notice of appellant's title. Carter v. Hawkins, 62 Texas, 397; Cook v. Caswell, 17 S. W., 386; Groesbeck v. Harris, 19 S. W., 850.

The undisputed evidence shows that appellant's conveyances of the certificate were duly and properly recorded in Trinity County, Texas, where the land was located at the time of the record, and appellees were bound to take notice of such record. Article 6857, Revised Statutes; Article 6835, Revised Statutes; Haines v. West, 101 Texas, 226; Shifflet v. Morelle, 4 S. W., 843.

Defendants claim under Minerva I. Roe, and were bound to take notice of her prior recorded transfer of the entire certificate and were charged with notice of all that appeared upon the face of such prior recorded transfer. As an essential part of the description of the thing conveyed and not as a mere recital, appears this: "The same being a part of the distributive share of the said Lewis Cox's estate, assigned by the Commissioners in partition to the said Minerva I. Roe, as one of the heirs at law of said estate, for which see the records of the District Court of the county and state aforesaid." This reference made the decree of the District Court of Walker County as much a part of the conveyance as if it had been copied in the conveyance in full. Randolph v. Lewis, 210 S. W., 795.

*Hill & Hill, Dean & Humphrey,* and *Baker, Botts, Parker & Garwood,* for defendants in error.—The patent from the Government of Texas to the heirs of Lewis Cox vested good record title in said heirs of date April 15, 1908, and the Davidson-Ingram Lumber Company was not required to go behind said patent, and search the records of Polk or Trinity County for a conveyance made by said heirs, or any of them, prior to the issuance of said patent; and since there was no conveyance executed by said heirs, or any of them, of record in Polk County, and no conveyance by said heirs or any of them executed subsequent to the issuance of said patent, at the time said Davidson-Ingram Lumber Company purchased said land from said heirs, and said heirs, at the time of such purchase, as patentees of the land, were the owners of good legal title thereto of record in Polk County, therefore, the Davidson-Ingram Lumber Company, on the purchase of the land from the heirs without actual notice of any former conveyance, and paying the full value therefor, was an innocent purchaser in good faith for value as against the claim asserted by the appellant Leonard. Wimberly v. Pabst, 55 Texas, 592; Bogart v. Moody, 79 S. W., 633; Breen v. Moorehead, 104 Texas, 254; Sickles v. White, 66 Texas, 179; Browning v. Pumphrey, 81 Texas, 163; Durst v. Daugherty, 81 Texas, 650.

The deed from John L. Rowe and wife Minerva I. Rowe, to James C. Dunlap, under which the plaintiff in error claims, was not a link in the chain of title of the defendants in error, and therefore the defendants in error are not charged with notice of any of the recitals in said deed. Greenleaf on Evidence, section 23; Watkins v. Smith, 91 Texas, 589; Houston v. Blythe, 60 Texas, 506.

The Davidson-Ingram Lumber Company, the predecessor in title of the Benford Lumber Company, purchased from the heirs of Lewis Cox and Minerva Cox, deceased, for a valuable consideration, without notice, actual or constructive, that Minerva Cox in her

lifetime had sold the land or the certificate, to those through whom appellant claims title. Holmes v. Johns, 56 Texas, 52; Taylor v. Harrison, 47 Texas, 459; Branch v. Weiss, 23 Texas Civ. App., 84.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

This was an action of trespass to try title, brought by plaintiff in error, R. L. Leonard, against defendants in error, Benford Lumber Company et al.

The land in controversy was 221 acres in Trinity County, which was originally located, on May 6, 1860, by virtue of a donation certificate issued to Lewis Cox.

By a decree of partition of the District Court of Walker County, between the heirs of the estate of Lewis Cox, in 1856, the certificate was allotted to Minerva I. Roe.

On July 15, 1857, Minerva I. Roe and husband conveyed to James C. Dunlap, the donation certificate, it being shown on the face of the conveyance that the certificate was a part of the distributive share of the estate of Lewis Cox, which had been assigned, by commissioners, in partition, to Minerva I. Roe as one of the heirs to the estate, as appeared on the records of the District Court of Walker County.

On March 17, 1860, James C. Dunlap conveyed the certificate to William R. Leonard, and, after the death of William R. Leonard, his heirs conveyed the land in controversy to plaintiff in error, R. L. Leonard.

The conveyances from Minerva I. Roe and husband to James C. Dunlap and from James C. Dunlap to William R. Leonard were duly acknowledged and were recorded, on May 7, 1860, in Trinity County. The records of Trinity County having been burned in 1872, these conveyances were again recorded, in 1874, in Trinity County. In 1875, that portion of Trinity County which included the land in controversy was detached from Trinity County and made a part of Polk County.

On April 15, 1908, the State of Texas patented the 221 acres of land to the heirs of Lewis Cox, their heirs or assigns.

On July 13, 1908, all the heirs of Lewis Cox, including the descendants of Minerva I. Roe, then deceased, conveyed the 221 acres to the Davidson-Ingram Lumber Company, incorporated, whose name was afterwards changed to Benford Lumber Company.

The conveyance to defendant in error, by its former corporate name, was by general warranty deed, for a consideration of $1326 in cash, which was paid by defendant in error, in good faith, without actual knowledge of any defect in the title which it acquired under said conveyance.

Unless the Benford Lumber Company was an innocent purchaser, it is apparent from the above statement that plaintiff in error is the owner of the superior title to the land in controversy.

The acquisition by Minerva I. Roe, in 1856, of the entire certifi-

cate, in the partition of the estate of Lewis Cox, is shown in her recorded conveyance to James C. Dunlap; but it is denied that defendant in error should be charged with notice of the contents of this conveyance for three reasons: first, that the conveyance was of a personal chattel and hence its registration was unauthorized; second, that the title acquired by defendant in error had its origin in the patent and defendant in error was not required to take notice of defects, though disclosed by the records, back of the patent; third, that constructive notice is confined to one's chain of title, and the conveyance by Minerva I. Roe is not a link in defendant in error's chain of title, or at least is not a link in said chain of title, save with relation to the interest in the land, which Minerva I. Roe acquired by inheritance from Lewis Cox, without aid from the partition.

Notwithstanding the certificate was conveyed when it was personalty, yet the conveyance concerned land after the location of the certificate in Trinity County. For, the legal effect of the conveyance of the certificate was to invest the purchaser with a title to the land, when located, and to make the patent, when issued, enure to the purchaser's benefit. Merriweather v. Kennard, 41 Texas, 281; Humphreys v. Edwards, 89 Texas, 516, 519, 36 S. W., 333; Cagle v. Sabine Val. Timber & Lumber Co., 109 Texas, 178, 202 S. W., 942. The transfer of the land certificate came within Lord Cairn's definition of a conveyance, when he stated: "There is no magical meaning in the word "conveyance;" it denotes an instrument which carries from one person to another an interest in land." Credland v. Potter, L. R. 10, ch. 8, 12. However, our statute not only authorized the record of conveyances but of all other instruments concerning land. Art. 6823, Rev. Stats.

This Court said, per Justice Gaines, in Shifflet v. Morelle, 68 Texas, 390, 4 S. W., 846; "When the location is made, antecedent transfers of the certificate, or of the right, being evidence of title to the specific land located, may be lawfully registered in the county where the property is situated."

The same construction is given the statute in Lewis v. Johnson, 68 Texas, 450, 4 S. W., 644; Tevis v. Collier, 84 Texas, 641, 642, 19 S. W., 801; Ranney v. Hogan, 1 U. C., 257; Peterson v. Lowry, 48 Texas, 411; and West v. Loeb, 16 Texas Civ. App., 402, 403, 42 S. W., 612.

To hold that a transfer of a land certificate could not be lawfully recorded in the county wherein it was subsequently located would be inconsistent with the often repeated declaration that the policy of our registration laws requires that our public records disclose all matters affecting our land-titles. Henderson v. Pilgrim, 22 Texas, 476; Moran v. Wheeler, 87 Texas, 184, 27 S. W., 54.

It cannot be said that patentees, or their assignees, may ignore an instrument, when duly recorded, by reason of their connection

with the patent, when the instrument has the legal effect to determine, in whole or in part, to whose benefit the patent itself enures.

It was held in Robertson v. Dubose, 76 Texas, 12, 13, S. W., 300, that an agreement that a patent to Caleb Holloway was common source of title, did not prevent a party to the agreement from proving a·conveyance, before patent, from Caleb Holloway, grantee of the certificate on which the patent issued, and a chain of title to the party from the vendee in such conveyance; because the proof merely showed who really owned the land under the patent.

There is no conflict between our holding and Breen v. Morehead, 104 Texas, 254, 136 S. W., 1047, Ann. Cases, 1914A, 1285, or Wimberly v. Pabst, 55 Texas, 587, relied on by defendant in error.

Breen v. Morehead determined that a purchaser need not look beyond the origin of the title under which he purchased, which was held to be the date of the application to buy the land from the State. 104 Tex. 257, 258. But, the title to the 221 acres in controversy originated in the donation certificate, which entitled Lewis Cox, his heirs and assigns, to 640 acres of land, by reason of the participation of Lewis Cox in the battle of San Jacinto. Manchaca v. Field, 62 Texas, 135; Welder v. Lambert, 91 Texas, 520, 44 S. W., 281; Creamer v. Briscoe, 101 Texas, 493, 109 S. W., 911, 17 L. R. A. (N. S.), 154, 130 Am. St. 869; McClintic v. Midland Gro. & Dry Goods Co., 106 Texas, 36, 154 S. W., 1157.

The case of Dickerson v. Bridges, 147 Mo., 235, 48 S. W., 827, involved a conflict between claimants of rights acquired under a homesteader, to whom land was subsequently patented. One claimant held a recorded deed of trust, given before patent but after the homesteader's entry on the land, on which the patent issued. The other held a deed of trust given after the patent. Notwithstanding the elder deed of trust antedated the patent, in speaking of the subsequent lien-holder's duty, the court said: "His inquiry for incumbrances should not have stopped with the date of the patent or its registry, but obviously it should have been carried back to the date of the original entry by the homesteader, as that marks the date and source of the title indicated by the patent." 48 S. W., 827.

The opinion in Wimberly v. Pabst, 55 Texas, 592, recognizes that actual or constructive notice of defects in the title to a land certificate, of one to whom patent subsequently issued on the certificate, would prevent a purchaser under the patentee from being protected as a *bona fide* purchaser. For the Court says: "When, therefore, a subsequent purchase is made upon the faith of a patent, regular upon its face, public policy requires that it should constitute an important element in the question of the good faith of the transaction, and should turn the scale in its favor, except in cases of actual notice, or when the law would impute constructive notice of some defect sufficient to defeat it."

Article 6842, Rev. Stats., provides that the record, in the proper county of an instrument of writing, duly proven or acknowledged, shall be taken and held as notice to all persons of its existence. Article 6857, Rev. Stats., declares that where an instrument in writing has been duly registered in the proper county, and the property conveyed by it afterwards falls within another county, such registration shall continue to be equivalent to actual notice of its contents to all persons whomsoever. Article 6824, Rev. Stats., declares that all conveyances of land shall be void as to all creditors and subsequent purchasers, for valuable consideration, without notice, *unless* acknowledged or proved and filed for record as required by law.

The above articles were in effect when the Lumber Company purchased the land in controversy; and, the registration in Trinity County of the conveyances by and under Minerva I. Roe, through which plaintiff in error, Leonard, deraigns his title, was just as effective as though such conveyances had been of record in Polk County at the date of the Lumber Company's purchase. Lumpkin v. Muncey, 66 Texas, 311, 17 S. W., 732.

The literal terms of articles 6842 and 6857 would require that *all* persons be held to know what appears on the face of a duly recorded instrument. However, our statutes bear a settled construction, under which registration of an instrument carries notice of its contents only to those bound to search for it, among whom are subsequent purchasers under the grantor in the recorded instrument.

Thus it is declared in Houston Oil Co. of Texas v. Kimball, 103 Texas, 108, 122 S. W., 540, that "a purchaser is required to look only for conveyances made prior to his purchase by his immediate vendor, or by a remote vendor through whom he derives his title," citing, White v. McGregor, 92 Texas, 558, 50 S. W., 565, 71 Am. St., 875, wherein the Court quote with approval the following language in Stuyvesant v. Hall, 2 Barb. Ch., 151, viz: "The recording of a deed or mortgage, therefore, is constructive notice only to those who have subsequently acquired some interest in or right in the property under the grantor or mortgagor." To the same effect are Carlisle & Co. v. King, 103 Texas, 624, 626, 133 S. W., 241; Jenkins v. Adams, 71 Texas, 5, 8 S. W., 603; Taylor v. Harrison, 47 Texas, 456, 457, 26 Am. R., 304; Throckmorton v. Price, 20 Texas, 609, 91 Am. Dec. 334; and Carnes v. Swift, 56 S. W., 87.

The opinion of Chief Justice Stayton in King v. Haley, 75 Texas, 170, 12 S. W., 1112, is decisive that whether the Benford Lumber Company be treated as a purchaser of the 221 acres of land, or of an undivided interest therein, from the heirs of Minerva I. Roe, it was a subsequent purchaser, charged with the duty to search for a prior recorded deed from Minerva I. Roe, and hence affected with

notice thereof. Such notice extended to all that was actually exhibited on the face of the prior recorded deed. Wiseman v. Watters, 107 Texas, 96, 174 S. W., 816. Enough was exhibited there to show that Minerva I. Roe had acquired full title to the certificate and had conveyed such title to Dunlap.

It seems to us that when it is determined that the law imposed on the Lumber Company the duty to investigate the records, for a certain registered instrument, there can be no doubt, that its defense of innocent purchaser failed, in so far as such defense rested on lack of knowledge of facts apparent on the face of the registered instrument. For, the very purpose of the registration statutes forbids the holding that one be treated as innocent of the contents of a record, made for his benefit and open to his examination. Kennard v. Mabry, 78 Texas, 156, 14 S. W., 272. As said by the Supreme Court of the United States in Neslin v. Wells, 104 U. S., 433, 26 L. Ed., 802; "The provisions of the law in reference to these records either have no purpose at all,—which we have no right to assume,—or their purpose was, that the public might have knowledge of the titles to real estate of which they are the registers. It would utterly defeat that purpose not to presume with conclusive force that the notice which it was their office to communicate had reached the party interested to receive it; for, if every man was at liberty to say he had failed to acquire the knowledge it was important for him to have, because he had not taken the trouble to search the record which the law had provided for the express purpose of giving it to him, then the ignorance which it was the public interest to prevent would become universal, and the law would fail because it refused to make itself respected."

Because it was the duty of the Lumber Company to have acquainted itself with the contents of the conveyance of Minerva I. Roe, as it appeared upon the records of Trinity County, it was legally chargeable with notice of such contents, and hence the defense of innocent purchaser failed.

It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and that judgment be here rendered for plaintiff in error for the 221 acres of land in controversy.

<div align="center">

*Reversed, and rendered in favor of plaintiff in error.*