STANDARD OIL COMPANY OF LOUISIANA *v.* CRAIG, ADMINISTRATRIX.

4-6295                                        150 S. W. 2d 744

Opinion delivered April 7, 1941.

*Gaughan, McClellan & Gaughan,* for appellant.

*Surrey E. Gilliam,* for appellee.

SMITH, J.   On June 5, 1920, the appellant, Standard Oil Company of Louisiana, acquired an oil and gas lease on a tract of land in Union county, in which J. W. Talton owned a 1-512 royalty interest.   In 1932, H. G. Craig obtained a judgment in the Union circuit court against Talton and others, the lien of which has been kept alive by several writs of *scire facias.*   The oil company had no actual notice of this judgment, and made royalty payments to Talton for his proportionate interest until advised in May, 1935, of the existence of the judgment. Craig's administratrix brought this suit, and recovered judgment for the amount of the royalty accruing to Talton between the dates of the judgment and the suspension of payment of royalty to Talton, and this appeal is from that decree.

In support of this decree we are cited § 8255, Pope's Digest, which provides that judgments recovered in the

circuit and certain other courts in this state shall be a lien on the real estate owned by the defendant in the county in which the judgment was rendered, from the date of its rendition. We are cited also to cases holding that oil in place is real estate. It is insisted, therefore, that the judgment should be affirmed for the reason that there has been conversion of property which was subject to the judgment lien.

The lease under which the oil was captured and converted by the oil company contains the following clause: "If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the conveyance hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof." The lease containing this clause was duly recorded.

If it be said—as it must be—that the oil company had constructive notice of the existence of the judgment, it must also be said that Craig, the judgment creditor, had notice, of the same character, of this provision of the oil and gas lease, and it is not contended that the judgment creditor advised the oil company of the existence of his judgment. It does not appear how many people were interested in this lease, but Talton, the judgment debtor, owned only a 1-512 interest. This judgment was not shown in the abstract of title upon the faith of which the oil company purchased the lease, and could not have been, because the judgment was rendered twelve years after the lease had been acquired.

The question, therefore, appears to be whether it was the duty of the oil company to make constant examinations of the judgment records to see if any one had acquired a subsequent lien, or whether the holder of the judgment should have advised the oil company of its rendition. The royalty accrued under this lease, which was of record, and the judgment creditor was affected with notice of its recitals, the manifest purpose of which

was to provide the oil company with notice of any change in the right to collect royalties.

The judgment creditor is dead, and the suit was brought by his administratrix. Any one of the many lessors may have died, and his interest inherited by his heir or heirs. A daughter of one of the lessors might have been an only heir, and might, by marriage, have changed her name, but a judgment recovered against this heir would be a lien, under § 8255 of Pope's Digest against her interest in the leased land. In such a case, or in similar cases, it would be difficult, if not impossible, for the oil company to know to whom payment should be made.

It would, in our opinion, impose an unreasonable burden upon the lessee to keep informed as to these possible changes in ownership, and especially so when, by the terms of the lease, it had the contractual right to be advised as to changes in ownership. The purpose of this provision in the lease was to enable the lessee to pay the royalty to the persons with whom it had contracted to pay without the peril of being compelled to pay royalty more than once.

In some cases, if not in this, the judgment creditor might not be unwilling for the judgment debtor to collect the royalties, but, if not, the judgment creditor should have so advised the lessee, and have given it the information for which the lease provided.

In Volume 3, Summers Oil and Gas, § 590, p. 428, it is said: "Covenants to pay royalties run with the land so that an assignee of a royalty interest is entitled to receive the royalty from the lessee or his assignee. Leases practically always provide that the lessee is not bound by changes in royalty ownership until notice of such change has been given in writing. In the absence of such notice, a lessee is not guilty of conversion of royalty oil for nondelivery or nonpayment to the assignee of a royalty interest, constructive notice of recorded transfers of royalty interests not being sufficient. A pipe line company purchasing the oil from a

lease is protected against conversion of royalty oil at the suit of a royalty owner or his assignee in the absence of notice of change of ownership in the royalty interest.'' Our case of *Shreveport-El Dorado Pipe Line Co.* v. *Bennett,* 172 Ark. 804, 290 S. W. 929, which construed a lease containing identical provisions in regard to notice of change of ownership, as herein set forth, is cited in support of the text quoted.

The decree will, therefore, be reversed, and the cause will be dismissed.

SMITH, J. (on rehearing). Our holding in this case is that the lessee is not liable for the conversion of the oil until given the notice for which the lease provides, which is a written notice. Now, that notice was not given; but our attention is called, in the petition for rehearing, to the fact that this requirement was waived as to a portion of the oil in a letter signed by appellant's superintendent, reading as follows:

''In answer to your letter of June 8, 1940, we remitted to J. W. Talton the sum of $31.19, representing the proceeds of his .001953 royalty interest in oil and gas delivered to us from the above farm during the period July 15, 1933, through June 14, 1935.

''We are withholding to the credit of this interest the sum of $51.83, representing the proceeds of oil run from June 15, 1935, to April 9, 1939, both dates inclusive. We disconnected our lines for oil on April 10, 1939. We are also holding the sum of $4.04, which represents the proceeds of this interest in gas delivered to us during the period June 15, 1935, through May, 1940.''

This letter states that the company was withholding $55.87 on account of the royalty arising from the Talton 1/512th interest in the lease, and no notice was required to give it additional information.

The decree from which is this appeal found the value of the royalty on this 1/512th interest since the date of the rendition of the judgment to be $87.06, and rendered judgment for 2/3rds of that sum, or $58.04, the difference being the value of a dower interest about which no

question is made, so that any judgment in favor of Craig's administratrix should be for 2/3rds of any amount for which the company is liable.

This judgment was erroneous because it includes royalty accruing before notice was given, but under the letter above copied royalty amounting to $55.87 accrued after notice. The judgment should, therefore, have been rendered for 2/3rds of this $55.87, or $37.24. The decree will, therefore, be modified by reducing the judgment from $55.04 to $37.24.

It was necessary to prosecute this appeal to obtain this relief. The important question in the case was the one of law, whether the oil company was responsible for the royalty before notice, and this question was decided in favor of appellant. The judgment of this court imposing the costs of the appeal on appellee will not be modified.